# Northwestern Lehigh School District v. Election Board of Lehigh County

*E. Drummond King,* for petitioner.
*John M Ashcraft III, assistant county solicitor,* for respondent.

BACKENSTOE, *P.J.,* October 21, 1988 — We have again before us the issue of when it is legal for this court to permit non-binding referenda to be placed on the ballot.

The question presented is:

"Should the Northwestern Lehigh School District incur a 20-year indebtedness of undetermined [millage] for a $7.4-plus million middle school, if an addition to the elementary school is needed?"[1]

The election board determined that under their criteria it was an appropriate referendum and directed that the question appear on the ballot for the November 1988 general election in the townships of Heidelberg, Lowhill, Lynn and Weisenberg.

The Northwestern Lehigh School District has filed a petition for equitable relief asking the court to enjoin the board from placing the aforesaid referendum on the November ballot contending inter alia that the "proposed referendum is contrary to the principles of representative democracy and its inclusion on the ballot would represent an unauthorized delegation of legislative authority.[2]

---

1. The proposed question reads "mileage."

The underlying facts leading to this dispute are really not in issue.

The Northwestern Lehigh School District through its duly elected board of directors has decided to undertake certain capital improvements to the district including the removal and incapsulation of asbestos, the replacement of roofs and the construction of a new middle school on land adjacent to the present school complex on Route 309 in New Tripoli. The concept of such a school has been under consideration by the board since the mid-1970's. The school district because of substantial and continual residential building must deal with a projected student enrollment far in excess of its present capacity.[3]

In 1987 the district formed a task force to consider and report on current and future capital facility needs. The committee was made up of all segments of the community, including members of the Northwestern Lehigh Taxpayers League, an organization which was formed in 1984 to review the propriety and necessity of governmental spending by the district and other municipal entities. The district also commisioned a feasibility study by a professional advisory group to determine the best way to handle the population growth problem — a report which was completed and filed with the district in January 1988. On May 5, 1988, the district held a public hearing as required by Act 36 of the Public School Law on the middle school project. Thereafter on June 15, 1988, the board, having heard the arguments pro and con, voted

2. In resolving the issues presented to us we of course take no position on the merits of the proposed referendum.

3. Department of Education prjections are 2220 students for the 1992-1993 school year. The rated capacity of the district at the present time is 1750.

unanimously to proceed with the capital improvements, including the middle school. At the same time a resolution was duly adopted condemning approximately 26 acres of land in Heidelberg Township adjacent to the present school facilities where the middle school will be erected.

Subsequently, upon petition of various taxpayers, the supervisors of the townships of Lynn, Heidelberg, Lowhill and Weisenberg adopted resolutions requesting the aforementioned question be placed on the November ballot as a non-binding referendum. The county Board of Elections, after hearing, voted to place the question on the ballot. The school district petitioned the court to strike the question and consequently the matter is before us for disposition.

The issue of the right to have non-binding referenda on the ballot has been subjected to judicial review in this and other counties a sufficient number of times to have developed a certain amount of consistency with uniform results. Thus, in *Upper Saucon Township v. The Election Board of Lehigh County*, 83-C-279, following *Lansdale v. Election Board of Montgomery*, 7 D.&C. 3d 220 (1978), this court held that in the absence of any specific legislative authority the court is without authority to compel an election board to place a non-binding advisory question on the ballot.

In *In re School Building Referendum, Shanksville, Stoney Creek School District*, 27 Somerset Leg. J. 10 (1971), the Somerset County court held that there cannot be a non-binding referendum by ballot unless there is a specific constitutional or statutory authorization for it.

In *Allentown School District Referendum*, 13 D.&C. 3d 741 (1980), this court held that since there was direct ballot control, this court lacks

power to sanction a non-binding referendum on the question of whether Allentown School District should adopt a middle school concept.

The only case which did permit a referendum was *Trexler Lake Project Referendum,* 4 D.&C. 3d 99 (1977), a case which involved a proposal of the Army Corps of Engineers and which clearly did not have a direct ballot control issue as spelled out by our colleague Judge Davison in *Allentown School District Referendum, supra.*[4]

Accordingly, since the facts of the instant petiton are not dissimilar, indeed for all practical purposes, identical with *Allentown School District,* (i.e. in both cases the proponents of the question are seeking to review the decisions made by a school board in carrying out its duties mandated by the public school code) we of necessity must grant the requested relief.

In so ruling, we would again quote Judge Kramer of the Commonwealth Court, cited by Judge Wieand in *Roth v. Saeger,* 36 Lehigh L.J. 515 (1976), and Judge Davison in *Allentown School District, supra.*

"It is indeed fitting that the electorate be given the opportunity to initiate some types of legislation and similarly to call into question the implementation of certain types of proposed legislation. However, the General Assembly has not extended that right to every possible area of legislation. One of the prices paid for the creation of a representative democracy is the vesting by the electorate of trust and responsibility in its elected representatives. Discretion is placed within the hands of the munic-

---

4. By direct ballot control we mean the voters who are eligible to vote on the referendum also have the power to vote for or against the elected official or officials deciding the questions.

ipal legislators and we must accept the lawful exercise of this discretion. The efficiency of government, its stability and the protection of the public at large necessitates the creation of certain categories wherein the legislative prerogative is unfettered by the initiative and referendum processes. The electorate nevertheless is not helpless in defending itself against unlawful legislation in the statutorily excluded areas, for it is before our courts that one may come and assert the illegality of a particular piece of legislation. Furthermore, it is at the ballot box that a voter may express the disapproval of the legislative programs of his elected officials." 13 D.&C. 3d at 746.

Accordingly, the requested relief must be granted. In light of this ruling we do not have to discuss the phrasing of the question about which we have serious reservations.

## ORDER

Now, October 21, 1988, following oral argument and consideration of the briefs and the record, and for the reasons set forth in the accompanying opinion, it is ordered that the Election Board of Lehigh County is enjoined from placing on the ballot the question referred to in the within opinion.